UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL MARTIN                          CIVIL ACTION

VERSUS                                  NO: 12-3005

FAB-CON, INC., ET AL.                   SECTION: R

**ORDER AND REASONS**

**I.   INTRODUCTION**

Defendant Fab-Con, Inc. moves the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] Because the Court finds that plaintiff is not a Jones Act seaman, the Court GRANTS defendant's motion and dismisses it from the case.

**II.  BACKGROUND**

Plaintiff Michael Martin began working as a cook for Fab-Con, a company that provides support services to companies engaged in offshore work,[2] on September 7, 2011.[3] From that date until November 20, 2012, plaintiff worked exclusively on either land or fixed platforms.[4] Plaintiff testified that he

---

[1]     R. Doc. 36.

[2]     R. Doc. 36-5 at 1.

[3]     *Id.* at 2; *id.* at 5.

[4]     *Id.* at 2.

occasionally spent time sleeping on vessels and traveling to platforms on vessels, however.[5] According to Dai Nguyen, plaintiff's supervisor,[6] plaintiff worked 195 days total on fixed platforms from the beginning of his employment with Fab-Con until November 20.[7]

On December 4, 2012, plaintiff began a seven-day hitch working as a galley hand on board the quarterbarge UNITY at Grand Bay Receiving Station, where Fab-Con was performing work for Apache Corporation.[8] Plaintiff testified that his duties on the UNITY included doing laundry, taking out the trash, mopping and sweeping, "break[ing] down the line," and cleaning refrigerators.[9] Nguyen stated that he allowed plaintiff to do the seven-day hitch because plaintiff wanted more work to supplement his income, and there was no platform work available at the time.[10] Nguyen testified that plaintiff's assignment on the UNITY would have "ended on December 10, 2012, which is the date when Fab-Con's work for Apache Corporation concluded."[11] After that

---

[5]   R. Doc. 36-6 at 7.

[6]   *See* R. Doc. 36-5 at 1; R. Doc. 36-6 at 3.

[7]   R. Doc. 36-5 at 2; *see also id.* at 5-14.

[8]   R. Doc. 36-5 at 3; R. Doc. 36-6 at 6.

[9]   R. Doc. 37-1 at 3.

[10]   R. Doc. 36-5 at 3.

[11]   *Id.*

date, plaintiff was to return to working on fixed platforms as a cook.[12]

On December 9, 2012, one day before his hitch on the UNITY was to conclude, plaintiff allegedly slipped and fell in a puddle of diesel oil in the barge's laundry room and sustained a herniated lumbar disc and a lumbar strain.[13] He then brought this Jones Act claim for negligence, unseaworthiness, and maintenance and cure against Fab-Con, Inc.[14] He seeks $1.5 million in damages for medical expenses, lost wages, pain and suffering, mental anguish, emotional stress, and loss of earning capacity, as well as maintenance and cure.[15] Shortly after filing suit, plaintiff amended his complaint to include claims for unseaworthiness against Equipment Co., LLC, the owner of the UNITY, and Barges Unlimited, Inc. and CCR, Inc., the charterers of the UNITY.[16]

Fab-Con now moves for summary judgment on the ground that plaintiff is not a Jones Act seaman as a matter of law because he spent less than five percent of his employment time on board a vessel.[17] Plaintiff responds that his reassignment to the UNITY

---

[12]   *Id.*

[13]   R. Doc. 1 at 2.

[14]   *See id.*

[15]   *Id.* at 3.

[16]   R. Doc. 19.

[17]   *See* R. Doc. 36.

constituted a change in status sufficient to entitle him to the protections of the Jones Act.[18]

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l*

---

[18]    *See* R. Doc. 37.

4

*Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

**III. DISCUSSION**

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (citing 46 U.S.C. § 688); *see also Becker v. Tidewater*, 335 F.3d 376, 386 (5th Cir. 2003). The term "seaman" is not defined in the Jones Act. *Chandris*, 515 U.S. at 355. The Supreme Court has instructed that not every "maritime worker on a ship at sea as part of his employment is automatically a member of the crew of the vessel within the meaning of the statutory terms." *Id.* at 363. Instead, to achieve status as a seaman, an employee must show (1) that his duties contributed to the function of a navigable vessel or the accomplishment of its mission; and (2) that he had a connection to a vessel in navigation (or to an identifiable group of vessels) that was substantial in terms of both its duration and its nature. *Id.* at 368; *Becker*, 335 F.3d at 387. The purpose of this test is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Chandris*, 515 U.S. at 368. Importantly, the Supreme Court has explicitly rejected a "voyage test," under which "anyone working on board a vessel for the duration of a 'voyage' in furtherance of the vessel's mission has the necessary employment-related connection

6

to qualify as a seaman." *Becker*, 335 F.3d at 388 (quoting *Chandris*, 515 U.S. at 358); *see also Chandris*, 515 U.S. at 361 ("Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured . . . ."); *id.* at 363.

Whether a person is a seaman is ordinarily a question of fact for the jury. *Becker*, 335 F.3d at 386; *Ellender v. Kiva Const. & Eng'g, Inc.*, 909 F.2d 803, 805 (5th Cir. 1990). But "summary judgment is appropriate where 'the facts establish [the lack of seaman status] beyond a question as a matter of law' and no reasonable evidentiary basis exists to support a jury finding that the injured person is a seaman." *Ellender*, 909 F.2d at 805-06 (alteration in original) (quoting *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir. 1986)); *accord Becker*, 335 F.3d at 386.

Here, Fab-Con has established as a matter of law that plaintiff lacked a substantial connection to the UNITY in terms of duration. To assess the temporal element of the seaman status test, the Supreme Court has adopted a rule of thumb: "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Chandris*, 515 U.S. at 371. According to Nguyen, Martin's supervisor, plaintiff spent only six days of his employment with Fab-Con engaged in seaman's work on board the

UNITY; the other 195 days were spent working on fixed platforms. Plaintiff has presented no evidence tending to contradict this account. Thus, assuming without deciding that the UNITY is a "vessel," plaintiff spent less than three percent of his time working for Fab-Con on board a vessel. True, plaintiff's testimony suggests that he spent time on vessels sleeping and traveling to platforms. But that time does not figure into the analysis because it was not spent "in the service of a vessel in navigation." *See, e.g.*, *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 347 (5th Cir. 1999) (holding that the time plaintiff "ate, slept, and spent time" on vessel could not be considered in the substantial connection analysis); *Williams v. Danos & Curole Mar. Contractors, LLC*, 797 F. Supp. 2d 712, 717 (E.D. La. 2011) (same).

Plaintiff argues that a departure from the thirty percent test is warranted here because Martin's seaman status changed when he was reassigned to the UNITY to work as a galley hand. In support of this argument, plaintiff cites *Chandris* for the proposition that "[w]hen a maritime worker's basic assignment changes, his seaman status may change as well."[19]

The Court is not persuaded. The Fifth Circuit has held that, in order for this exception to the thirty percent test to apply, the reassignment must be permanent. *Becker*, 335 F.3d at 390. In

---

[19]    R. Doc. 37 at 2-3 (quoting *Chandris*, 515 U.S. at 372).

8

*Becker*, the Fifth Circuit considered whether an engineering intern who had been assigned to work a temporary hitch as a member of the crew of the technological vessel REPUBLIC TIDE was a Jones Act seaman. The court held that he was not, because "the mere fact that [he] was ordered to work a crew position aboard the REPUBLIC TIDE [was] not sufficient as a matter of law to establish a substantial connection to that vessel, absent evidence that his essential duties as an intern had changed." *Id.* at 391.

The same conclusion is appropriate here. There is no evidence that the nature of Martin's employment was "permanently changed or that his that his essential duties . . . had been altered by his assignment to the [UNITY]." *Id.* Instead, the evidence indicates that "plaintiff's position on the [UNITY] arose by happenstance," *id.*, when plaintiff was unable to obtain sufficient hours working on fixed platforms and asked Nguyen for extra work.[20] According to Nguyen's affidavit, plaintiff was to return to his work as a cook on fixed platforms as soon as his seven-day hitch on the UNITY ended.[21] In other words, plaintiff's work aboard the UNITY was only temporary; it did "not constitute the kind of regular or continuous commitment of his labor to the service of that vessel that regularly exposed him to the perils

---

[20]    *See* R. Doc. 36-5 at 3.

[21]    *Id.* at 3.

of the sea within the meaning of *Chandris*." *Id.; see also Smith v. Nicklos Drilling Co.*, 841 F.2d 598, 600 (5th Cir. 1988) (for purposes of the Jones Act, a "permanent" assignment is one that is "'for an indefinite period' -- not temporary").

It is true that plaintiff testified that, when Nguyen reassigned him, Nguyen told him that it could be for the duration of the Apache job if Martin wanted it.[22] But plaintiff did not contradict Nguyen's testimony that the job for Apache was to conclude on December 10, 2012, at the end of plaintiff's seven-day hitch on the UNITY. Accordingly, there is no evidence in the record suggesting plaintiff's position as a galley hand on the UNITY was intended to last "for an indefinite period," *Smith*, 841 F.2d at 600. Instead, it is clear that plaintiff's work on the UNITY would have ended on December 10, 2012, at the conclusion of the Apache job. A jury faced with this record could reach only one reasonable conclusion: plaintiff's assignment to the UNITY was not a permanent and "fundamental change in status" that made him a Jones Act seaman. *See, e.g., George v. Cal-Dive Int'l, Inc.*, Civil Action No. 09-5472, 2010 WL 2696876, at *1, 6 (E.D. La. July 1, 2010) (finding that plaintiff who was injured on board a vessel where he had been working for 12 days was not a Jones Act seaman as a matter of law because he did not "expect permanent or prolonged placement with any particular vessel or

---

[22]    *See* R. Doc. 36-6 at 8.

identifiable group of vessels under common ownership or
control"); *Nicole v Southstar Indus. Contractors*, No. Civ.A. 03-
1432, 2004 WL 936848, at *1-2 (E.D. La. Apr. 29, 2004) (finding
that plaintiff who had been injured on board a vessel was not a
Jones Act seaman as a matter of law because "his time aboard
th[e] vessel was limited to approximately a seven week
refurbishing project," and there was no evidence suggesting that
he had an ongoing connection to that vessel or any other); *cf.
Wilcox v. Welders*, Civil Action No. 12-2389, --- F. Supp. ----,
2013 WL 4591162, at *7 (E.D. La. Aug. 28, 2013) ("The Fifth
Circuit has rejected claims of seaman status as a matter of law
in numerous cases in which temporary offshore workers . . .
claimed that they were permanently reassigned for a discrete
voyage in which their essential duties did not change."
(collecting cases)).

In view of the foregoing, the Court concludes that plaintiff
lacked a substantial connection to a vessel and that Fab-Con is
entitled to summary judgment on plaintiff's status as a seaman.
*See Williams*, 797 F. Supp. 2d at 717. Accordingly, plaintiff's
claims under the Jones Act and for maintenance and cure must be
dismissed. *See Lantz v. SHRM Catering Servs., Inc.*, No. 93-4940,
14 F.3d 54, at *1 (5th Cir. Jan. 5, 1994) (unpublished) ("The
standard for determining seaman status for the purposes of
maintenance and cure is the same as that established for

determining status under the Jones Act." (quoting *Hall v. Diamond M Co.*, 732 F.2d 1246, 1248 (5th Cir. 1984)); *Williams*, 797 F. Supp. 2d at 717 (dismissing Jones Act and maintenance and cure claims because plaintiff spent less than thirty percent of his time on a vessel).

The Court's finding that plaintiff is not a Jones Act seaman also means that plaintiff's unseaworthiness claim against Fab-Con must fail. *See Stumbaugh v. Am. Commercial Lines LLC*, Civil Action No. 08-1669, 2009 WL 1458037, at *1 (E.D. La. May 26, 2009); 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6-27 (5th ed. 2013) ("The warranty of seaworthiness . . . is a duty owed only to a narrow class of maritime workers -- those who can claim 'seaman' status under the law."). Because plaintiff is not a seaman, he is limited to a cause of action pursuant to the Longshore and Harbor Workers' Compensation Act, which applies "to maritime workers "injured upon navigable waters while in the course of [their] employment." *Bienvenu v. Texaco, Inc.*, 164 F.3d 901, 907 (5th Cir. 1999); *Becker*, 335 F.3d at 386 (because "the Jones Act and the LHWCA are 'mutually exclusive compensation regimes,'" if a plaintiff is not a Jones Act seaman, "he is protected only by the LHWCA"). Workers covered by the LHWCA do not have a cause of action for unseaworthiness. *See* 33 U.S.C. § 905(b); *Becker*, 335 F.3d at 387; *Aparicio v. Swan Lake*, 643 F.2d 1109, 1116 n.11 (5th Cir. 1981) (noting that section 905(b)

12

"abrogat[ed] the unseaworthiness remedy" for employees covered by the LHWCA).[23] The Court thus dismisses plaintiff's claim against Fab-Con for unseaworthiness as well.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff is not a Jones Act seaman. Thus, plaintiff's claims against Fab-Con for negligence, unseaworthiness, and maintenance and cure cannot succeed. Plaintiff has asserted no other claims against Fab-Con. Accordingly the Court GRANTS Fab-Con's motion for summary judgment and dismisses it from this case.

The Court's holding that plaintiff is not a seaman also means that his claims for unseaworthiness against Equipment Co., LLC, Barges Unlimited, Inc., and CCR, LLC are not viable. The Court thus puts the parties on notice that it will enter summary judgment in favor of all of the remaining defendants fourteen

_____

[23]      In the Fifth Circuit, there is a narrow exception to the rule that only Jones Act seamen can assert a cause of action for unseaworthiness. "[M]aritime workers who are not within the coverage of the LHWCA" -- so-called *Sieracki* seamen -- may still bring unseaworthiness claims. *Aparicio*, 643 F.2d at 1118; *accord Authement v. Conoco, Inc.*, CIV. A. No. 86-3482, 1987 WL 54426, at *4 (E.D. La. Nov. 20, 1987); *see generally Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946). Plaintiff does not argue that he qualifies as a *Sieracki* seaman, and, indeed, any such argument would not succeed. It is undisputed that plaintiff spent nearly of all his employment with Fab-Con working on fixed platforms. Accordingly, he falls within the coverage of the LHWCA, and is thus not a *Sieracki* seaman by definition. *See Becker*, 335 F.3d at 391 ("Fixed platforms are not vessels, and workers injured on them are covered under the LHWCA, not the Jones Act."); *Aparicio*, 643 F.2d at 1118.

13

(14) days from the date of this order if plaintiff does not show

cause why such a ruling is inappropriate.


New Orleans, Louisiana, this 12th day of March, 2014.


_Sarah Vance_
_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE


14