UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL MARTIN                          CIVIL ACTION

VERSUS                                  NO: 12-3005

FAB-CON, INC., ET AL.                   SECTION: R


**ORDER AND REASONS**

**I.   INTRODUCTION**

Defendants Equipment Co., LLC and CCR, LLC move the Court to dismiss this case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] Defendants argue that the Court lacks jurisdiction over this matter because the barge upon which plaintiff was working when he was injured is not a "vessel." As is explained more fully below, the Court treats this motion as a motion for summary judgment because the issue of whether the barge is a vessel is intertwined with the merits of the case. Because the Court finds that the barge is not a vessel under *Lozman v. City of Riviera Beach, Fla.*, 133 S.Ct. 735 (2013), the Court GRANTS defendants' motion and dismisses them from this case.


**II.  BACKGROUND**

Plaintiff Michael Martin brought this Jones Act claim for

-----
[1]    R. Doc. 40.

negligence and unseaworthiness against his employer, Fab-Con, Inc., based on an accident Martin allegedly sustained on December 9, 2012, while working as a galley hand aboard the quarterbarge UNITY at Grand Bay Receiving Station.[2] Martin alleges that while on the barge he slipped and fell in a puddle of diesel oil and sustained a herniated lumbar disc and a lumbar strain.[3] He seeks $1.5 million in damages for medical expenses, lost wages, pain and suffering, mental anguish, emotional stress, and loss of earning capacity, as well as maintenance and cure.[4] Shortly after filing suit, Martin amended his complaint to include claims for negligence and unseaworthiness against Equipment Co., LLC, the owner of the UNITY, and Barges Unlimited, Inc. and CCR, Inc., the charterers of the UNITY.[5]

On March 12, 2014, the Court granted summary judgment to Fab-Con on the issue of seaman status, holding that plaintiff lacked a sufficiently substantial connection to a vessel to qualify as a Jones Act seaman.[6] Thus, the only remaining claims in this litigation are plaintiff's claims against Equipment Co., CCR, and Barges Unlimited for unseaworthiness and negligence

---

[2]   R. Doc. 1 at 1-2; R. Doc. 19 at 1; R. Doc. 40-3 at 6.

[3]   R. Doc. 1 at 2.

[4]   *Id.* at 3.

[5]   R. Doc. 19; R. Doc. 40-4 at 1.

[6]   R. Doc. 75.

under the general maritime law.

The primary issue in the motion under consideration is whether the UNITY qualifies as a "vessel" for purposes of the general maritime law. Accordingly, the Court will describe the UNITY's characteristics in detail.

While at Grand Bay, the UNITY was located approximately thirty feet from shore in a waterway.[7] The barge drew roughly five feet of water.[8] It was not grounded on the waterway bottom, but rather remained in place via tethers to an adjacent crane barge.[9] The barge had a bilge pump,[10] a slightly raked hull,[11] and housed a considerable amount of equipment, including kitchen fixtures, a washer and dryer, and two generators that served the barge's electrical needs.[12] It was incapable of self-propulsion, had no engine or rudder, and was spudded in place on the date of the accident.[13] The parties dispute whether the vessel was equipped with lifeboats and other life-saving equipment and also

---

[7]    R. Doc. 56-6 at 2.

[8]    *Id.*

[9]    *Id.*

[10]    *Id.*

[11]    *Id.; see also* R. Doc. 40-7 at 1.

[12]    R. Doc. 56-6 at 2; *see also* R. Doc. 40-5 at 2.

[13]    R. Doc. 40-4 at 2-3; R. Doc. 40-5 at 2-3.

dispute whether it had navigation lights.[14]

According to the affidavit of C.J. Tabor, a member of CCR, the UNITY "was constructed to serve solely as stationary housing accommodations."[15] Tabor states that the UNITY was not designed to transport passengers, cargo, or equipment across the water, and it was never used in such a way.[16] Shawn Lebouef, Corporate Operations Executive for Fab-Con, corroborated Tabor's characterization of the barge's purpose and capabilities,[17] deeming the UNITY "essentially a floating hotel."[18] According to Lebouef, CCR and Fab-Con staffed the UNITY with between two and four people at any one time, including a cook, a maintenance man, and a galley hand.[19] Plaintiff's description of the UNITY's function is largely consistent with the accounts of Tabor and Lebouef: in his affidavit, plaintiff states that "[p]ersons from various companies used the quarters-barge UNITY for bunking, washing clothes, sleeping and eating," and attending meetings.[20]

---

[14]    *Compare* R. Doc. 40-4 at 2-3; R. Doc. 40-5 at 2-3 *with* R. Doc. 56-6 at 2-3.

[15]    R. Doc. 40-4 at 2.

[16]    *Id.*

[17]    R. Doc. 40-5 at 2-3.

[18]    *Id.* at 2.

[19]    *Id.*

[20]    R. Doc. 56-6 at 3.

The record reveals that the UNITY has remained stationary for the majority of the past five years. From October 2009 to September 2012, the UNITY was located in the Swiftships Shipyard in Morgan City, Louisiana.[21] On September 1, 2012, CCR leased the UNITY to Fab-Con for use as housing accommodations for Fab-Con's employees while they worked on a project in Grand Bay.[22] The UNITY was towed to Grand Bay and remained there until January 2013, when it was moved back to the Swiftships Shipyard.[23] It is still at that shipyard today.[24]

## II.  LEGAL STANDARD

### A.  Conversion to Motion for Summary Judgment

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). A

---

[21]    R. Doc. 40-4 at 2; R. Doc. 40-5 at 2.

[22]    R. Doc. 40-4 at 3; R. Doc. 40-5 at 1-2; *see also* R. Doc. 56-2 (Master Charter and Service Agreement between CCR and Fab-Con dated September 1, 2012).

[23]    R. Doc. 40-4 at 3; R. Doc. 40-5 at 2.

[24]    R. Doc. 40-4 at 3.

5

district court may dismiss for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). When examining a factual challenge to subject matter jurisdiction under Rule 12(b)(1), the district court has the authority to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Jackson v. U.S. Dep't of Housing & Urban Dev.*, No. 96-30619, 116 F.3d 477, at *1 (5th Cir. Apr. 17, 1997) (unpublished); *accord Withrow v. Miller*, 348 F. App'x 946, 948 (5th Cir. 2009).  Accordingly, the court may consider matters outside the pleadings, such as testimony and affidavits. *Garcia v. Copenhaver, Bell, & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); 5B Charles Allen Wright, *et al.*, Federal Practice and Procedure § 1350 (3d ed. 1998).

But, "when . . . issues of jurisdictional fact are intermeshed with the merits of a case, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other.'" *Sierra Club v. Shell Oil Co.*, 817 F.2d 1169, 1172 (5th Cir. 1987) (quoting *McBeath v. Inter-Am. Citizens for Decency Comm.*, 374 F.2d 359, 363 (5th Cir. 1967)); Wright, *et*

6

al., *supra*, § 1350. Put slightly differently, "[w]here the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Sierra Club*, 817 F.2d at 1172 (alterations in original) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)); *accord Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004). The Fifth Circuit has explained that "[n]o purpose is served by indirectly arguing the merits in the context of federal jurisdiction. Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits." *Montez*, 392 F.3d at 150 (quoting *Williamson*, 645 F.2d at 415).

Here, the question of whether the UNITY is a "vessel" is undoutedly an issue of jurisdictional fact. *See, e.g.*, *Miles ex rel. Miles v. VT Halter Mar., Inc.*, 792 F. Supp. 2d 919, 924 (E.D. La. 2011) (ruling that the court lacked admiralty jurisdiction over plaintiff's claims under the general maritime law because the barge on which he was injured was not a vessel). But it is also a crucial component of the merits of this case. Were the Court to find that the UNITY is not a vessel, plaintiff's unseaworthiness claims claims would be nonviable, *see Daniel v. Ergon, Inc.*, 892 F.2d 403, 409 n.10 (5th Cir. 1990)

("[U]nseaworthiness requires the existence of a vessel."); *Riley v. Alexander/Ryan Mar. Servs. Co.*, Civil Action No. 3:12-CV-00158, --- F. Supp. 2d ----, 2013 WL 5774872, at *4 (S.D. Tex. Oct. 24, 2013), as would his claims for negligence under the general maritime law, *see Riley*, 2013 WL 5774872, at *5 (granting summary judgment to defendants on plaintiff's claim for negligence under the general maritime law because plaintiff's injury did not occur on a vessel). In fact, the Fifth Circuit has explicitly approved dismissal of a plaintiff's unseaworthiness claims on the merits, at the summary judgment stage, on the ground that the structure on which the plaintiff was working at the time of his injury was not a vessel. *See, e.g.*, *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 290, 294 n.11 (5th Cir. 1990); *Reeves*, 720 F.2d at 837. The Fifth Circuit has also approved of a district court's granting summary judgment on claims brought under the general maritime law based on a finding of no vessel status. *See Holifield v. Great Lakes Dredge & Dock Co.*, No. 94-30202, 53 F.3d 1280, at *5 (5th Cir. Apr. 18, 1995) (unpublished) (affirming district court's grant of summary judgment to defendants because structure upon which plaintiff was injured was not a vessel, and consequently his clams did "not bear a sufficient relationship to traditional maritime activity to support admiralty jurisdiction"). Accordingly, the Court will construe the motion to dismiss for lack of subject matter

jurisdiction as a "direct attack on the merits of the plaintiff's case," *Sierra Club*, 817 F.2d at 1172, and treat it as a motion for summary judgment.

### B.    Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed

verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

10

III. DISCUSSION

A.    Definition of "Vessel"

The statutory definition of a vessel includes "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3. "Not *every* floating structure is a 'vessel.'" *Lozman v. City of Riviera Beach, Fla.*, 133 S.Ct. 735, 740 (2013); *see also id.* at 743 (rejecting "the 'anything that floats' approach" to determining whether a structure qualifies as a vessel); *Mooney v. W&T Offshore, Inc.*, Civil Action No. 12-969, 2013 WL 828308, at *4 (E.D. La. Mar. 6, 2013) ("*Lozman* 'sent a shot across the bow' of those lower courts whose 'opinions [could] be read as endorsing the "anything that floats" approach' to determining vessel status." (alteration in original) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, No. 10-1653, 2013 WL 311084, at *3 (S.D.N.Y. Jan. 25, 2013))). Instead, in order to determine whether a given "artificial contrivance" is a vessel, a court must determine whether "a reasonable observer, looking to the [structure]'s physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." *Lozman*, 133 S.Ct. at 741; *see also Stewart v. Dura Const. Co.*, 543 U.S. 481, 496 (2005) (determinative question is "whether the watercraft's use 'as a means of transportation on water' is a

11

practical possibility or merely a theoretical one"). The
structure need not be used "primarily" for the purpose of
transportation over water; it need only be "regularly" used or
"practically designed" for that purpose. *Lozman*, 133 S.Ct. at
742-43. In divining the purpose of the structure, courts are to
consider only "objective evidence of a waterborne transportation
purpose," rather than "the subjective intent of the owner." *Id.*
at 744-45.

In *Lozman*, the Court held that the petitioner's houseboat
did not satisfy that test. Justice Breyer, writing for the
majority, listed several characteristics of the boat that
compelled the conclusion that it was not a "vessel" within the
meaning of the statute: (1) it lacked a "rudder or other steering
mechanism"; (2) it did not have a raked hull; (3) it had a
rectangular bottom only ten inches below the water; (4) it could
not generate or store its own electricity without a connection to
land; (5) its rooms looked like ordinary living quarters; (6) it
lacked the capacity of self-propulsion; and (7) although capable
of being towed over water, the boat had only been so moved four
times over a period of seven years. *Id.* at 741. The Court
concluded that, "[b]ut for the fact that it floats, nothing about
[the] home suggests that it was designed to any practical degree
to transport persons or things over water." *Id.* It had "no other
feature that might suggest a design to transport over water

12

anything other than its own furnishings and related personal
effects." *Id.*

   The *Lozman* Court noted that "some lower court opinions can
be read as endorsing the 'anything that floats' approach." *Id.* at
743. Among the opinions the Court listed was the Fifth Circuit's
decision in *Holmes v. Atlantic Sounding Co.*, 437 F.3d 441 (5th
Cir. 2006). There, the Fifth Circuit determined that the
quarterbarge BT-213 was a "vessel" for purposes of the Jones Act.
*Id.* at 443. The BT-213 was "in effect, a floating dormitory,"
with a four-person crew of two cooks and two janitors, sleeping
quarters, toilet facilities, a galley, locker rooms, and
electrical generators. *Id.* It was not capable of self-propulsion,
but it had temporary running lights installed when it was to be
towed. *Id.* at 444. It had a raked bow, but no navigational or
steering equipment or lifeboats. *Id.* The Fifth Circuit concluded
that the BT-213 was properly considered a vessel, because it was
"'practically capable' of transporting equipment," such as the
"sleeping and eating 'equipment'" and feeding and housing
supplies on board," and because it had a raked bow, was outfitted
with "vessel-like gear," and was only temporarily moored. *Id.* at
448-49.

   The *Lozman* majority found *Holmes*'s analysis "inappropriate
and inconsistent with [Supreme Court precedent]." *Lozman*, 133
S.Ct. at 743. The Supreme Court explicitly rejected the reasoning

that a quarterbarge can be considered a vessel because it can transport "its own furnishings and related personal effects." *Id.* at 741. Indeed, Justice Sotomayor made a version of this argument in dissent in *Lozman*: she contended that the petitioner's houseboat should be classified as a vessel because it transported "large appliances (like an oven or a refrigerator) and all of the other things [one] might find in a normal home." *Id.* at 752 (Sotomayor, J., dissenting). The majority rejected Justice Sotomayor's analysis, reasoning that "a transportation function need not turn on the size of the items in question." *Id.* at 745. The Court "believe[d] the line between items being transported from place to place (*e.g.*, cargo) and items that are mere appurtenances is the one more likely to be relevant." *Id.* (citing Benedict, *American Admiralty* § 222, at 121).

## B.   Application

The Court finds that the reasoning and result of *Lozman* compel the conclusion that the UNITY is not a vessel within the meaning of 1 U.S.C. § 3. Indeed, the UNITY is quite similar in most relevant respects to the houseboat at issue in *Lozman*. Like the petitioner's houseboat in *Lozman*, the UNITY has no rudder or other steering mechanism, is incapable of self-propulsion, has remained stationary for most of the past several years, and its

14

interior is similar to living quarters on land.[25] True, the UNITY had a generator on board for a limited period of time, had a slightly raked hull, and its bottom was farther below the water than that of the *Lozman* houseboat. But the Court finds that these differences are not sufficient to make a reasonable observer think that the UNITY was designed to a practical degree for transporting people or cargo over water. Plaintiff has failed to present any evidence that the barge ever did transport any "cargo," *id.* at 745 -- that is, anything other than "its own furnishings and related personal effects," *id.* at 741 -- or that it was designed with such a purpose in mind. That distinguishes this case from *Stewart v. Dutra*, the other recent Supreme Court opinion on vessel status. In *Stewart*, the Supreme Court found that the "Super Scoop," a massive dredge that removed silt from the sea floor and deposited it on adjacent scows, was a vessel. 543 U.S. at 484. In contrast to the UNITY, the Super Scoop had "limited means of self-propulsion" -- it could navigate short distances by manipulating its anchors and cables. *Id.* As it performed its dredging work, it would move in this way once every two hours, carrying its crew along with it. *Id.* at 484-85. Thus, "the Super Scoop was not only 'capable of being used' to transport equipment and workers over water -- it *was* used to transport those things." *Id.* at 495. "Indeed, it could not have

---

[25]     *See* R. Docs. 40-7, 40-8.

15

dug the Ted Williams Tunnel had it been unable to traverse the
Boston Harbor, carrying with it workers like [plaintiff]." *Id.*
The UNITY, on the other hand, was incapable of moving under its
own power, and even when it was being towed, it never transported
a crew or cargo. Instead, it was designed exclusively to house
workers, serving, in the words of Lebouef, as a "floating hotel."

It is true that the UNITY is nearly indistinguishable from
the quarterbarge considered in *Holmes*. *See Holmes*, 437 F.3d at
448-49. But, given that the *Lozman* Court cast considerable doubt
on the soundness of *Holmes*'s reasoning, *Holmes* does not control
this case.

The Court's holding is consistent with that of other courts
to consider the vessel status of similar structures in the wake
of *Lozman*. *See Armstrong v. Manhattan Yacht Club, Inc.*, No. 12-
CV-4242, 2013 WL 1819993 (E.D.N.Y. Apr. 30, 2013) (holding that a
floating clubhouse was not a vessel because "[i]ts primary
purpose (and, as the evidence demonstrates, its only use) [was]
to serve as a viewing platform" for individuals to watch sailboat
races); *Sea Village Marina, LLC v. A 1980 CARLCRAFT HOUSEBOAT*,
Civil Action No. 09-3292, 2013 WL 1501789, at *3 (D.N.J. Apr. 11,
2013) (holding that it lacked subject matter jurisdiction over an
*in rem* action against four houseboats "because the *Lozman* case
established that floating homes which do not transport passengers
or cargo" are not vessels). The Court's analysis here is also

16

consistent with *Gremillion v. Gulf Coast Catering Co.*, which was
the controlling Fifth Circuit jurisprudence on the vessel status
of quarterbarges before the decision in *Holmes*. There, the court
determined that the quarterbarge Q/B MINDY was not a vessel, even
though it was "easily transportable," because "the significance
of its transportation function [was] purely incidental to its
primary mission of providing living facilities to workers in
relatively shallow waterways." *Gremillion*, 904 F.2d at 294. The
court explained:

> [The quarterbarge] does not transport cargo or
> passengers, it is not designed for navigation, it was not
> engaged in navigation at the time of the injury, and
> there is no evidence to suggest that the Q/B MINDY ever
> provided housing on the open sea unattached, directly or
> indirectly, to an appurtenance of the shore.
>     Significantly, the Q/B MINDY's motive power was
> provided externally through towboats, as it had no
> engines, rudders, or navigational equipment (except
> lights). It also was not registered with the Coast Guard
> as a vessel. In weighing all the factors that this court
> deems relevant to vessel status, the conclusion is
> inescapable that the Q/B MINDY is a nonvessel for
> purposes of the Jones Act.

*Id.* So it is with the UNITY. There is virtually no evidence that
the quarterbarge was designed to transport people or cargo over
water or otherwise navigate over water, or that it ever in fact
did so. Moreover, at oral argument, plaintiff's counsel explained
that the barge was indirectly attached to the shore, such that
one could walk from the barge to the shore by following a series
of gangplanks. Finally, the evidence indicates that the UNITY was
spudded in place, in relatively shallow water, only a few feet

from the shore throughout the entire period of plaintiff's assignment to it.[26] *Cf. id.* at 291 ("During the course of [plaintiff]'s assignment on the Q/B Mindy, the barge was never refloated for transportation to a new site . . . .").

### C.  Plaintiff's Arguments

Plaintiff presents several arguments in favor of his position that the UNITY qualifies as a vessel, but the Court finds none of them persuasive.

First, plaintiff argues that the Master Charter and Service Agreement executed between CCR and Fab-Con on September 1, 2012 establishes that the UNITY is a vessel. But, as defendants correctly point out, "parties cannot contractually agree to determine vessel status . . . . Vessel status is determined by the history of the contrivance, it use, purpose, and perhaps potential, not what the parties call it." *St. Paul Fire & Mar. Ins Co. v. SSA Gulf Terminals, Inc.*, No. Civ. A. 01-3063, 2002 WL 31260153, at *6 (E.D. La. Oct. 8, 2002). Moreover, the Court notes that the contract to which plaintiff refers is a master agreement, written to cover "[a]ll Charter Orders" between CCR and Fab-Con.[27] That a master agreement generally obligates CCR to provide seaworthy vessels to Fab-Con sheds little light on the

---

[26]    *See* R. Doc. 40-5 at 3.

[27]    R. Doc. 56-2 at 3.

purpose or function of the UNITY in particular.

Second, plaintiff contends that the determination of whether the UNITY is a vessel is properly a question for the jury. This is incorrect. "The determination of whether a given craft is a vessel is ordinarily resolved as a matter of law." *Manuel*, 135 F.3d at 347. It is true that "marginal claims are properly left for jury determination." *Id.* (quoting *Ducote v. V. Keeler & Co.*, 953 F.2d 1000, 1002 (5th Cir. 1992)). But this is not a marginal case. As noted above, the parties do dispute some factual issues, such as whether the UNITY had lifeboats and navigational lights. But the Court finds that, even were these disputes to be resolved in plaintiff's favor, the UNITY would not be a vessel as a matter of law. The dispositive inquiry under *Lozman* and *Stewart* is whether the contrivance is actually used or intended to be used to transport persons or cargo -- that is, something more than its own furnishings and "appurtenances." *Lozman*, 133 S.Ct. at 745. Here, the answer is no. It is unsurprising that there would be lifesaving equipment on a "floating hotel," since there was presumably a risk that the barge could sink with workers onboard even while secured in place at Grand Bay. That the UNITY may have had lights is also unremarkable, given that the barge was sometimes (though infrequently) towed over open water. These two features, even if present, would not suggest that the UNITY was designed or used to transport cargo or people over open water,

and thus they would not be sufficient to make the UNITY a vessel
under Supreme Court precedent. *Cf. Gremillion*, 904 F.2d at 291
(finding that quarterbarge was not a vessel even though it "was
capable of being moved easily, was involved in commerce, and
possessed other attributes of Jones Act vessels, such as
navigational lights, life preservers, and sleeping quarters").

Third, plaintiff argues that the affidavits of Tabor and
Lebouef are unreliable because they are contradicted by the
Master Charter and Service Agreement, and because Tabor and
Lebouef do not have personal knowledge of the facts set forth in
their affidavits. For the reasons stated above, the Court does
not find the Master Agreement probative as to the vessel status
of the UNITY. The Court is also satisfied that Tabor and Lebouef
are sufficiently knowledgeable about the characteristics of the
UNITY to submit sworn statements regarding the UNITY's features
and intended purpose. Tabor is a member of CCR and negotiated the
terms of the charter agreement for the UNITY from CCR to Fab-
Con.[28] Lebouef is the Corporate Operations Executive for Fab-Con
and executed that agreement.[29] Moreover, both individuals
specifically averred that they had personal knowledge of the
facts presented in their affidavits.[30] Accordingly, the Court

---

[28]    R. Doc. 40-4 at 1.

[29]    R. Doc. 40-5 at 1-2.

[30]    R. Doc. 40-4 at 1; R. Doc. 40-5 at 1.

20

concludes that the affidavits are reliable and may form a basis for the Court's ruling on this motion. *Cf. DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) (district courts may "rely on affidavits where the affiants' 'personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore'" (quoting *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990))).

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the quarterbarge UNITY is not a vessel. Thus, plaintiff's claims against Equipment Co. and CCR for unseaworthiness and negligence under the general maritime law cannot succeed. *Daniel*, 892 F.2d at 409 n.10 ("[U]nseaworthiness requires the existence of a vessel."); *Riley*, 2013 WL 5774872, at *5 (because plaintiff's injury did not occur on a vessel, summary judgment in favor of defendants on plaintiff's claim for negligence under the general maritime law was proper); *cf. City of Riveria Beach v. That Certain Unnamed Gray, Two-Story Vessel Approximately Fifty-Seven Feet In Length*, 527 F. App'x 841, 841-42 (11th Cir. 2013) (holding, on remand from the Supreme Court's decision in *Lozman*, that the district court must dismiss the plaintiff's trespass claim because the barge in question was not a vessel); *Ingrassia*

*v. Marina Del Ray, LLC*, Civil Action No. 06-2565, 2006 U.S. Dist. LEXIS 85374, at *5-10 (E.D. La. Nov. 22, 2006) (holding that plaintiff alleging negligence could not satisfy location test for admiralty jurisdiction because the barge upon which the plaintiff was injured was not a vessel). The Court thus GRANTS defendants' motion and dismisses them from this suit.

Plaintiff has also brought a claim for unseaworthiness and negligence under the general maritime law against Barges Unlimited Inc. Barges Unlimited has not moved for summary judgment, but the Court's finding that the UNITY is not a vessel is necessarily fatal to plaintiff's claim against Barges Unlimited. The Court thus puts the parties on notice that it will enter summary judgment in favor of Barges Unlimited fourteen (14) days from the date of this order if plaintiff does not show cause why such a ruling is inappropriate.

New Orleans, Louisiana, this 24th day of March, 2014.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE